**CHESAPEAKE BAY FOUNDATION, INC., Natural Resources Defense Council, Inc., Plaintiffs,**

v.

**GWALTNEY OF SMITHFIELD, LTD., Defendant.**

**Civ. A. No. 84–0366–R.**

United States District Court, E.D. Virginia, Richmond Division.

July 18, 1988.

Jeter M. Watson, Chesapeake Bay Foundation, Richmond, Va., James Thornton, Natural Resources Defense Council, Inc., New York City, Ann Powers Gailis, Scott Burns, Chesapeake Bay Foundation, Inc., Annapolis, Md., for plaintiffs.

H. Woodrow Crook, Jr., Smithfield, Va., Anthony F. Troy, James E. Ryan, Jr., George A. Somerville, Mays, Valentine, Davenport & Moore, Richmond, Va., for Gwaltney of Smithfield, Ltd.

J. Robert Brame, III, McGuire, Woods & Battle, Richmond, Va., for Ralston.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on remand from the Court of Appeals for the Fourth Circuit. The Fourth Circuit, acting on the mandate of the Supreme Court in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* —— U.S. ——, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), remanded this case for further findings on whether the citizen-plaintiffs have proved an ongoing violation of the Clean Water Act, 33 U.S.C. § 1365(a). The Supreme Court determined that § 505(a) of the Clean Water Act does not confer federal jurisdiction over citizen suits for wholly past violations. However, citizen-plaintiffs may prevail if there exists a continuing

---

pattern of intermittent violations, even if there is no violation at the moment the action is filed.

In its remand opinion, the Fourth Circuit provided considerable guidance for determining whether an ongoing violation has been shown. The Court may find that an ongoing violation has been proved if at trial the plaintiffs either

(1) ... "prov[ed] violations that continue[d] on or after the date the complaint was filed, or (2) ... adduc[ed] evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."

*Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171 (4th Cir.1988) ("Remand opinion").

This Court has previously determined that on numerous occasions from October 27, 1981 through May 15, 1984, Gwaltney exceeded the discharge limitations of its National Pollution Discharge Elimination System (NPDES) permit for a variety of pollutants. *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 611 F.Supp. 1542, 1544 (E.D.Va.1985) ("*Gwaltney*"). The evidence at trial demonstrated that Gwaltney had a history of repeated wintertime violations of its total Kjeldahl nitrogen (TKN) limitations. Despite remedial measures taken by Gwaltney, the winter season preceding plaintiffs' June 1984 complaint produced TKN violations. *Gwaltney*, 611 F.Supp. at 1549 n. 8.

The parties are now in agreement that the changes Gwaltney had implemented in its wastewater treatment system prior to June, 1984 have since proven effective. Proof of subsequent violations is, however, not the sole means of showing an ongoing violation. If the evidence at trial showed a continuing likelihood of a recurrence in violations, jurisdiction was proper regardless of the subsequent failure of the hazards to materialize. Remand opinion at 171.

The Court was presented with clear and unrefuted evidence of intermittent violations occurring before May, 1984. Such violations "do not cease to be ongoing until the date when there is no real likelihood of repetition." Remand opinion at 172. Testimony at trial established without question that at least some reasonable likelihood of a recurrence in intermittent violations existed. One expert, Dr. Bell, cited numerous factors supporting his opinion that the upgraded wastewater treatment system would likely exceed the TKN limitations during the winter of 1984–85 following trial. Although some of the factors cited by Dr. Bell had been modified in the system,[1] there is no question but that the witness had clear doubts, based upon other articulated factors,[2] about continued compliance. This Court has previously taken note that one of Gwaltney's own witnesses, Mr. Sneed, expressed doubt as to whether Gwaltney would meet its TKN limitations.[3] *Gwaltney*, 611 F.Supp. at 1549 n. 8. Despite Gwaltney's improved wastewater treatment facilities, there was no degree of certainty in June 1984 that the risk of continued violations had been eradicated. Rather, the evidence at trial demonstrated that at the time plaintiffs filed suit, there existed a very real danger and likelihood of further violation.

Gwaltney contends that even if a danger of further TKN violations existed at trial, there was no likelihood of further violations attributable to the chlorination system. Gwaltney argues that the Court

---

**1.** Some of the surface aerators had been replaced with submerged aerators, and the difficulties with the anaerabic lagoon grease cover had been addressed.

**2.** Dr. Bell expressed concern over at least one remaining surface aerator, the increased kill rate over design kill rate, improper or inadequate laboratory testing procedures, the configuration of the aerobic lagoon, and his perception of the prevailing attitude at Gwaltney regarding waste treatment.

**3.** Mr. Sneed's testimony included:

Q. "Given the importance, as you mentioned before, of maintaining adequate grease cover, isn't there some doubt in your mind as to whether the Gwaltney facility would be in compliance with TKN limits this winter?"
A. "Yes, we have."
Q. "Isn't there some doubt? That is all I am asking."
A. "I think there is some doubt every year that you would expect the plant to go out of compliance at some time."

should therefore distinguish for penalty purposes any ongoing TKN violations from the chlorination system violations which had ceased. Defendant's invitation to the Court to deviate from its appellate court's mandate is declined. Under the restrictions of *Stamper v. Baskerville,* 724 F.2d 1106 (4th Cir.1984), the Court is not at liberty to evaluate this argument on remand. The rule of this circuit is that:

[o]nce a case has been decided on appeal and a mandate issued, the lower court may not "vary [the mandate] or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded."

*Id.* at 1107 (citation omitted). The mandate in this matter is clear and unequivocal: this Court is to determine whether "plaintiffs proved at trial an ongoing violation" as defined by the Fourth Circuit. Remand opinion at 171.

*Conclusion*

Having found that the evidence adduced at trial shows a reasonable continuing likelihood of a recurrence of intermittent violations at the time the action was filed, the Court finds that plaintiffs proved an ongoing violation. The original judgment of the Court imposing upon Gwaltney a total civil penalty of $1,285,322 shall be reinstated.

An appropriate Order shall issue.