**Steve WORK, et al., Plaintiffs,**

**v.**

**TYSON FOODS, INC., and The City of Green Forest, Arkansas, Defendants.**

No. 87–2034.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 24, 1989.

---

McMath Law Firm, P.A. by James Bruce McMath & Philip H. McMath, Downing & Ledbetter by Samuel E. Ledbetter, Little Rock, Ark., James G. Lingle, Rogers, Ark., for Steve Work, et al.

Wright, Lindsey & Jennings by John G. Lile, III and M. Samuel Jones, III, Little Rock, Ark., and Michael H. Mashburn, Fayetteville, Ark., for Tyson Foods, Inc.

Davis, Cox & Wright by Sidney P. Davis and Constance G. Clark, Fayetteville, Ark., for City of Green Forest, Ark.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This action was commenced by the plaintiffs filing the original complaint March 3, 1987. The plaintiffs sought permission and filed their second amended complaint September 16, 1988, as a civil action pursuant to the citizens suit provision, Section 505 of the Federal Clean Water Act (the Act), as amended, 33 U.S.C. § 1365(a), § 1365(a)(2), § 1365(e), § 1370, § 1345, § 1314, § 1318(a), § 1319, § 1317, § 1311, and § 1251, together with various administrative orders issued by the Environmental Protection Agency (EPA), to the City of Green Forest (the City) and the National Pollutant Discharge Elimination System (NPDES) permit.

The plaintiffs also rely on other provisions of law for relief, including the Safe Drinking Water Act, 42 U.S.C. § 300, et seq., the Resources Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, et seq., provisions of Ark.Stats.Ann. § 82–209, 220, the Arkansas Water and Air Pollution Control Act, the Arkansas Solid Waste Management Act, Ark.Stats.Ann. § 82–1901 and Ark.Stats.Ann. § 82–2701, et seq., involving state permits issued pursuant to state and federal laws.

Furthermore, the plaintiffs seek tort action under common law of the State of Arkansas governing riparian rights, nuisance, constructive and inverse condemnation, declaratory judgment, injunctive relief, the imposition of civil penalties, compensatory and punitive damages, and attorneys fees and costs.

It is established that this court has jurisdiction over the issues involved under Section 505(a) of the Clean Water Act, 33 U.S.C. §§ 1365(a), 1365(a)(2) and 1365(e), and § 1370; 42 U.S.C. § 1983 and § 1985; 28 U.S.C. § 2201 and 28 U.S.C. § 1331. Venue in this case is appropriate in the Western District of Arkansas pursuant to 33 U.S.C. § 1365(c).

The plaintiffs in this action gave required notice of alleged violations on November 18, 1986, and that they intended to file suit. 33 U.S.C. § 1365(b)(1)(A), 42 U.S.C. § 6901, et seq., and 42 U.S.C. § 300, et seq.

Originally there were approximately 106 plaintiffs joined in the case, all of whom resided in Carroll County, Arkansas.

The defendant, City of Green Forest (the City), is a municipality located in Carroll County, Arkansas, and is, therefore, a political subdivision of the State of Arkansas; the City has owned and continues to own and manage a Publically Owned Treatment Works (POTW) which receives waste water effluent from the residents of the City and industrial waste water from the plant of the defendant, Tyson Foods, Inc., (Tyson) located in or near Green Forest, Arkansas. To meet the requirements of the Clean Water Act, 33 U.S.C. § 1365, the City obtained a NPDES permit to discharge pollutants from its POTW into Dry Creek, thence to Long Creek in the White River

basin. These discharges were and are discharges of pollutants into navigable waters as defined by § 1362 of the Act.

Originally the Arkansas Department of Pollution Control and Ecology and the United States Environmental Protection Agency were made defendants in the lawsuit on the basis that those agencies had failed to adequately enforce the Act as required. They were dismissed by the court on a showing of their respective efforts and actions as required by law.

The defendants timely answered the complaints of the plaintiffs and have vigorously opposed the contentions of plaintiffs seeking the relief as above alleged in the plaintiffs' complaint. The defendants have denied the allegations of the plaintiffs and have made special efforts to have the alleged charges against the defendants dismissed.

Substantial discovery has been accomplished by the parties in preparation for trial on the issues in the litigation. The court conducted pre-trial hearings and finally scheduled the case for trial commencing Tuesday, April 4, 1989. A jury was impanelled to consider and determine appropriate questions such as the common law tort claims of individual plaintiffs; the question of alleged violations of the Clean Water Act, including civil penalties; and request for injunctive relief. The trial of the case required six weeks and the testimony of numerous witnesses, including many of the plaintiffs, defendants, federal and state officers involved in the management of the pollution laws affecting the environment under which people must live. Each of the parties presented expert witnesses. At the conclusion of a long and tedious trial, the court instructed the jury on the issues of law applicable for the jury's determination in the case. After the court instructed the jury on the issues involved, and counsel having presented their respective arguments to the jury, appropriate interrogatories were presented for the jury's consideration which the court determined the jury should decide. The jury deliberated on the issues presented to them for three days and returned their unani-

mous verdicts late afternoon of the third day.

First, the jury decided for the City on the question of discharging waste water into Dry Creek and returned a verdict in favor of the City as against the plaintiffs. Pursuant thereto, Judgment was entered on June 19, 1989, in favor of the defendant, City of Green Forest, Arkansas, and against the plaintiffs, Steve Work, et al.

On Interrogatory No. 2 the jury's verdict decided Tyson violated the Clean Water Act.

On Interrogatory No. 3 the jury decided that there were 43 separate occasions since November 16, 1981, that Tyson violated the Clean Water Act.

On Interrogatory No. 4 and final verdict by the jury awarded damages to 40 of the plaintiffs as named therein. The jury determined the damages to each for the plaintiffs as itemized damage to real property to each of the 40 plaintiffs and other compensatory damages. These verdicts were returned and filed with the court. By direction, the clerk entered judgment for each of the plaintiffs in accordance with the unanimous verdicts of the jury on June 19, 1989.

As the jury in its deliberations determined by their verdicts that Tyson was responsible for 43 violations, it becomes the duty and responsibility of this court to assess the penalty in accordance with the Clean Water Act, 33 U.S.C. § 1319(d), which provides:

"Any person who violates section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator, or by a State, or in a permit issued under section 1344 of this title by a State, and any person who violates any order issued by the Administrator under subsection (a) of this section, shall be subject to a civil penalty not to exceed $10,000 per day of such violation."

Under the provisions of the Act if a person is determined to be "in violation," it

becomes the responsibility of the district court to decide the extent of the penalties as set out hereinabove. Thus, in the instant case the jury has decided unanimously that Tyson violated the terms of the Act and it becomes the duty of this court to assess civil penalties pursuant to Title 33 U.S.C. § 1319(d). *Tull v. United States*, 481 U.S. 412, 427, 107 S.Ct. 1831, 1840, 95 L.Ed.2d 365.

Although there have been differences of opinion as to the interpretation of the opinion of the United States Supreme Court in the case of *Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.*, 611 F.Supp. 1542 (D.C.Va.1985), this court is of the opinion that the opinions by the district court, Fourth Circuit Court of Appeals, and the Supreme Court, *supra*, together with the remand to the court of appeals, thence the return by remand to the district judge, provides a complete guide for this court in the instant case. The district court, The Honorable Robert R. Merhige, Jr., in a thorough opinion set forth the applicable law in cases involving the Clean Water Act, 33 U.S.C. § 1365. The issues there are somewhat similar to the issues in the instant case. The Court explained that: "This suit is a citizen enforcement action—a 'citizen suit'—authorized by Section 505 of the Clean Water Act, 33 U.S.C. § 1365.... The violations reported in Gwaltney's DMRs form the basis of this action. Where a permittee is in violation of an NPDES discharge limitation, it is also 'in violation of ... an effluent standard or limitation under [the Act],' 33 U.S.C. § 1365(a)(1), which makes the permittee subject to citizen suits. *Id.* For citizen suits under the Clean Water Act, Congress has authorized the district courts to assess appropriate civil penalties. 33 U.S.C. § 1365(a). Such penalties may be as high as '$10,000 per day of such violation.' 33 U.S.C. § 1365(d)."

Further, the court stated: "It is clear that, at least under the Clean Water Act, a citizen enforcer can only establish standing if it meets the requirements of 'injury in fact' set forth in *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972)." Continuing, the court held: "In addition to the ambiguity in the words 'to be in violation' standing alone, other portions of Section 1365 suggest that Gwaltney's proffered construction is not the only—or the most—plausible one." Section 1365 states that: "The district courts shall have jurisdiction ... to apply any appropriate civil penalties under [33 U.S.C. § 1319(d)]."

"33 U.S.C. § 1365(a). Section 1319(d) authorizes civil penalties 'not to exceed $10,-000 per day of ... violation.' 33 U.S.C. § 1319(d)."

Also, the district court in *Gwaltney* concluded that civil penalties should be assessed.

In discussing the legislative history of the Clean Water Act, the court concluded that the Act authorizes citizen suits based on unlawful conduct that "occurred in the past regardless of whether the conduct continues through the time the complaint is filed." This decision was based on the statement made by Senator Muskie, the manager in the Senate of the bill that added the citizen suit provision to the Act. Having reached such conclusion, the district court proceeded to impose penalties arising out of the problems with its biological treatment system and violations adduced from the chlorination waste. Penalties in the sum of $1,285,322 were assessed for such continuous violations.

In affirming the decision of the district court on the appeal, the Fourth Circuit Court of Appeals held that: (1) private "citizen suits" under the Clean Water Act could be based on past violations of the act: (2) each violation of monthly averages for discharge of pollutants amounted to a violation for each day of the month, for purposes of setting the maximum civil penalty; and (3) the district court did not abuse its discretion in setting the penalty.

To resolve conflicts in the Circuit Courts of Appeals, *see* 484 U.S. 49, 108 S.Ct. 376, 380–81, 98 L.Ed.2d 306 (1987), the Supreme Court granted certiorari.

The case was regularly scheduled and argued October 5, 1987. The opinion of the Supreme Court was decided December 1,

1987, and delivered by Mr. Justice Marshall.

The Court held that § 505(a) of the Clean Water Act authorizes private citizens to commence a civil action for injunctive relief and/or the imposition of civil penalties in federal district court against any person "alleged to be in violation" of the conditions of a National Pollutant Discharge Elimination System (NPDES) permit. The court further determined that between 1981 and 1984, petitioner Gwaltney repeatedly violated the conditions of its NPDES permit by exceeding authorized effluent limitations. However, said the court, due to the installation of new equipment, petitioner's last reported violation occurred in May 1985. Nevertheless, in June 1984, having given notice of their intent to sue, as required by § 505(b) of the Act, respondents filed a § 505(a) suit alleging that the petitioner "has violated ... [and] will continue to violate the NPDES permit."

The Supreme Court held, *inter alia*, that the Act's legislative history indicates that § 505 suits were intended to abate pollution and to enjoin continuous or intermittent violations, not to remedy "wholly past violations." "Our conclusion that § 505 does not permit citizen suits for wholly past violations does not necessarily dispose of this lawsuit, as both lower courts recognized." Continuing, "The District Court found persuasive the fact that '[respondents'] allegation in the complaint, that Gwaltney was continuing to violate its NPDES permit when plaintiffs filed suit[,] appears to have been made fully in good faith.' ... Because we agree that § 505 confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation, we remand the case to the Court of Appeals for further consideration."

Continuing, the Supreme Court stated that "Petitioner argues that citizen-plaintiffs must prove their allegations of ongoing noncompliance before jurisdiction attaches under § 505.... We cannot agree. The statute does not require that a defen-

dant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be alleged to be in violation.... We agree with the Solicitor General that Congress's use of the phrase 'alleged to be in violation' reflects a conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards."

Finally, "Because the court below erroneously concluded that respondents could maintain an action based on 'wholly past violations' of the Act, it declined to decide whether respondents' complaint contained a good-faith allegation of ongoing violation by petitioner. We therefore remand the case for consideration of this question."

On remand, the Fourth Circuit Court of Appeals held in a per curiam opinion that "We remand to the district court for further findings as to whether, on the merits, plaintiffs proved at trial an ongoing violation. Citizen-plaintiffs may accomplish this either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition. While the district court did make subsidiary findings pertinent to this issue, *see, e.g.,* 611 F.Supp. at 1549 n. 8, 1566 (Appendix A), it *did not* make a direct finding as to whether citizen-plaintiffs proved the existence of intermittent or sporadic violations constituting an ongoing violation."

The court went on to say "Consistent with the guidance of the Supreme Court majority and concurring opinions, the district court may wish to consider whether remedial actions were taken to cure violations, the *ex ante* probability that such remedial measures would be effective, and any other evidence presented during the proceedings that bears on whether the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit."

On receiving the remand in carrying out the direction of both the Supreme Court and the Fourth Circuit Court of Appeals, District Judge Merhige acknowledged that the Fourth Circuit Court provided considerable guidance for determining whether an ongoing violation has been shown. The court may find that an ongoing violation has been proved if at trial the plaintiffs either "(1) ... prov[ed] violations that continue[d] on or after the date the complaint was filed, or (2) ... adduc[ed] evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171 (4th Cir.1988) ("Remand Opinion").

Therefore, Judge Merhige concluded that "the mandate in this matter is clear and unequivocal: this court is to determine whether 'plaintiffs proved at trial an ongoing violation' as defined by the Fourth Circuit."

Further, he stated that "having found that the evidence adduced at trial shows a reasonable continuing likelihood of a recurrence of intermittent violations at the time the action was filed, the court finds that plaintiffs proved an ongoing violation. The original judgment of the Court imposing upon Gwaltney a total civil penalty of $1,285,322 shall be reinstated." *Chesapeake Bay Found. v. Gwaltney of Smithfield*, 688 F.Supp. 1078–80 (E.D.Va.1988).

Therefore, the ultimate and final decision in the *Gwaltney* case resulted in a judgment of civil penalty as stated hereinabove.

After having heard, and having benefit of the entire record in the instant case, it is the opinion of this court that it parallels virtually to the point the result in the *Gwaltney* case, *supra.*

As an example, in the instant case the court submitted Interrogatory No. 2 to the jury as follows: Do you find from a preponderance of the evidence that the defendant, Tyson Foods, Inc., violated the Clean Water Act? The unanimous decision of the jury on the question was "Yes." Along with this interrogatory the court instructed the jury, No. 23, as follows: "If you find

by a preponderance of the evidence that Tyson Foods, Inc., has violated the Clean Water Act by causing the City of Green Forest, Arkansas, to violate a provision of its Clean Water Act permit, you must determine the number of occasions on which Tyson has violated the Clean Water Act. In order to make this determination, you must determine how many violations by the City of its Clean Water Act permit were caused by Tyson."

In that the jury determined by its verdict, Interrogatory No. 2, that the defendant, Tyson Foods, Inc., violated the Clean Water Act, together with its response to Instruction No. 23, the jury determined that there were 43 violations within the period of time commencing with November 16, 1981. The jury having reached its decisions by the return of their verdicts that Defendant Tyson was responsible for Green Forest having violated the City's permit, it now becomes the responsibility of this court to determine the penalties that should be assessed for "such violations."

It is an established fact that Tyson Foods was involved in a number of pollution controversies commencing at least during the seventies. It is an established fact of record that Tyson Foods was a part of and committed ongoing violations of the Clean Water Act since well before March 1984. Tyson Foods has also been involved in litigation involving disposal of waste water under the laws of Arkansas. It is also an established fact that Tyson has been charged with ongoing violations of the Clean Water Act in a fairly recent decision, *Atlantic States Legal Foundation, Inc., v. Tyson Foods, Inc.*, 682 F.Supp. 1186 (N.D. Ala.1988), two cases, where defendant's two commercial plants were involved in proceedings arising under the Federal Water Pollution Control Act as reported March 4, 1988.

A review of the plaintiff's second amended complaint makes it indelibly clear that the plaintiffs have made good-faith allegations of ongoing violations by Tyson. The citizen-plaintiffs in this case have alleged continuous or intermittent violations in an effort to establish a "reasonable likelihood"

that Tyson's utilization of the facilities of Green Forest will repeat such violations. As already stated, Green Forest was and is operating under a permit from both EPA and the state agency.

It has been established by substantial testimony in the trial of this case of intermittent violations occurring before November 1985. The plaintiffs have alleged and have attempted to prove such violations to be ongoing until a date when there would be no likelihood of repetition. It is the opinion of the court that testimony at the trial was received by the court and jury that established at least some reasonable likelihood of a recurrence of intermittent violations by the defendants.

Defendant Tyson has strongly contended that a new facility of the defendant was undertaken and is now in place, operating to alleviate the previous violations at a cost in excess of a million dollars. The defendants insist that the flow of wastewater from its plant through the facility of Green Forest would prove and has already without question alleviated the previous violations.

Many witnesses on behalf of the plaintiffs have insisted that there have been intermittent and sporadic violations since the facility of Tyson became operational November 1985. In fact, it developed during the closing days of the trial that extensive oil and sludge occurred in Dry Creek which caused accusations by both parties. It is a fact that there was waste that occurred in Dry Creek which the plaintiffs said came from the Green Forest facility and the defendants claimed was an act brought on by the plaintiffs.

This court, having concluded that there was substantial evidence adduced at the trial establishing a reasonable likelihood of a recurrence of intermittent violations before and since November 1985 when Tyson's new treatment facility began operating, and that there was alleged good-faith allegations of the plaintiffs of ongoing violations and pursuant to the verdicts returned by the jury, now has the responsibility of to make a determination of reasonable penalties as required by 33 U.S.C. § 1365. This court has no hesitancy and concludes that the record clearly establishes good-faith allegations by the plaintiff as included in the complaint and the reasonable likelihood of repetition under the arrangements between Tyson and the City of intermittent and sporadic violations at some period in the future.

In consideration of civil penalties for the violations of the Clean Water Act as found by the jury, the court would first consider the testimony by both parties. In applying the facts as developed during the trial, the court should keep in mind the extent of violations as well as the number of violations through the years. As already noted, the jury concluded by its verdicts that there were 43 violations during the period of time applicable to this litigation. The court construes the decisions of the jury to be that there were violations on 43 separate days.

Obviously the court in consideration of assessing penalties in this case would give great weight to verdicts returned in the case by the jury on the questions submitted to the jury for their determination.

The attention of the court has been called to the policy by EPA in arriving at just and reasonable penalties under the statute. There are two documents containing the policy of EPA as noted: Policy on Civil Penalties and A Framework for Statute–Specific Approaches to Penalty Assessments. The first document focuses on the general philosophies behind the penalty policy. The second document provides guidance to each program on how to develop medium-specific penalty policies. Additionally, there have been some recent cases in Arkansas wherein Consent Judgments were entered in settlements involving, *inter alia*, civil penalties. *United States v. City of Berryville*, Case No. 87–3010, Consent Decree as to Berryville entered October 1, 1987. Also, the court is pleased to have the recommendations of Honorable Anne Roberts Bobo, Attorney for the Arkansas Department of Pollution, Control & Ecology in amicus curiae brief submitted for the court's consideration.

Ability to pay and litigation considerations are included in the factors to be considered in arriving at a just and equitable decision.

In consideration of these factors, and the court having presided over the trial of the case, it is the opinion of the court that the maximum penalty for each violation that could be assessed in the case would be unnecessary. Applying the maximum under the Act would subject the defendant to civil penalties in the sum of $430,000.

It is the considered judgment of this court that a civil penalty of $1,000 for each of the 43 violations would be reasonable, just and equitable. Therefore, the court will enter a final judgment against the defendant, Tyson Foods, Inc., in the sum of $43,000 as total penalty for violations in accordance with the unanimous verdicts of the jury.

The court incorporates into this Memorandum Opinion its findings and conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A judgment will be entered in accordance with this opinion.