**NATURAL RESOURCE DEFENSE COUNCIL, INC., Plaintiff,**

v.

**GOULD, INC., Defendant.**

**Civ. A. No. 89–0746–H.**

United States District Court,
D. Massachusetts.

Oct. 27, 1989.

Peter L. Koff, Murphy, DeMarco & O'Neill, P.C., Boston, Mass., James F. Simon, and Nora J. Chorover, Natural Resources Defense Council, Inc., New York City, for plaintiff.

John Bilanko, Gould, Inc., Rolling Meadows, Ill., Marcus E. Cohn, P.C., Gregory P. Deschenes, Peabody & Brown, Frederick A. Kelly, Jr., and Tracey E. Madden, Peabody & Brown, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case arises from a citizen's action by Plaintiff, Natural Resources Defense Council, Inc., against Defendant, Gould, Inc., for at least one hundred sixty violations of the Clean Water Act, 86 Stat. 816, 33 U.S.C. § 1251 *et seq.* (1986 Ed.). Plaintiff alleges that one hundred fifty-seven of these violations occurred prior to filing the complaint on April 5, 1989, and at least three [1] occurred after it was filed. Plaintiff's Memorandum at 2.

The Clean Water Act (hereinafter "the Act") was promulgated in 1972 to "restore and maintain the chemical, physical and biological integrity of the nation's waters." § 1251(a). To achieve these goals, the Act makes unlawful the discharge of any pollutants into navigable waters except as authorized by specific sections of the Act. § 1311(a). *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 52, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987), *vacated and remanded,* 844 F.2d 170 (4th Cir.1988), *remanded,* 688 F.Supp. 1078 (E.D.Va.1988).

One of the sections establishes the National Pollutant Discharge Elimination System ("NPDES"). § 1342. The Environmental Protection Agency ("the EPA") issues NPDES permits ("the permit"), and a holder of a permit is subject to enforcement action by the Agency for failure to comply with the conditions of the permit. § 1342(a). Under Sections 1319 and 1342(b)(7), a permit holder is subject to federal and state enforcement for failure to comply. In the absence of such enforcement, private citizens may commence civil actions against any person "alleged to be in violation of" the conditions of either a federal or state NPDES permit. § 1365(a)(1). If a citizen prevails, a court may impose injunctive relief and/or impose statutorily guided civil penalties payable to the U.S. Treasury. *Id.* at 53, 108 S.Ct. at 379.

The plaintiff is currently before this Court seeking a summary judgment on the issue of defendant's liability for its permit violations, as well as seeking a preliminary injunction to enjoin any further violations. The defendant has filed a cross-motion for summary judgment, seeking a ruling of law that the defendant may not be penalized for any of the pre-complaint violations. Defendant also opposes the motion for preliminary injunction. Both parties agree that the defendant has violated its permit for a total of at least one hundred sixty times since February, 1984, by discharging pollutants from its electroplating factory into the Merrimack river. Defendant's own Discharge Monitoring Reports ("DMRs") are determinative on the issue of liability, *see Student Public Interest Research Group v. Monsanto Co.,* 600 F.Supp. 1479, 1483 (D.N.J.1985) ("*Monsanto I*"), *affirmed,* 870 F.2d 652 (3d Cir. 1989), and defendant admits the violations in its memorandum. Defendant's Cross Motion at 4.

Based upon defendant's submissions from Larry Brill, designated keeper of the records for the EPA relating to defendant Gould, Inc., the EPA has monitored Gould

---

1. The plaintiff's memorandum alleged at least three post-complaint violations. Defendant's statement of undisputed facts, paragraph 4, states that one hundred forty-nine violations of Gould's NPDES permit occurred before April 5, 1989, and the remaining violations occurred after April 5, 1989. At oral argument, defendant stated that at least four post-complaint violations have occurred.

and has filed EPA Inspection Reports dated June 24, 1988 and July 9, 1987. Laboratory results of defendant's facility have been filed for an EPA inspection conducted on May 19, 1987. One EPA Administrative Order, No. 87–12, was issued against defendant in March, 1987, but no penalties were imposed. It is a simple matter, therefore, to find that defendant is liable for violating its permit at least one hundred sixty times.

The central dispute here pertains to the imposition of penalties and requires an interpretation of a provision of the Clean Water Act, in light of a recent Supreme Court opinion, *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). The Supreme Court held in *Gwaltney* that a district court has no jurisdiction to hear cases which allege only wholly past violations. The Court further held that Section 505 requires citizen-plaintiffs to make a good faith allegation of either continuous or intermittent violation—"that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381.

Both parties in this case seek a ruling of law regarding the scope of relief which a district court may grant for permit violations. Plaintiff contends that the court has authority under *Gwaltney* to consider all permit violations, past and present, and to impose civil penalties for pre-complaint violations as well as injunctive relief and monetary penalties for post-complaint violations. Defendant asserts that *Gwaltney* proscribes the imposition of penalties for pre-complaint violations.

This Court has jurisdiction in the case at bar under the holding in *Gwaltney*, as the complaint does allege continuing violations subsequent to the filing of the complaint, and jurisdiction is conferred solely for the very reason that post-complaint violations are alleged in good faith. Although *Gwaltney* made the jurisdictional requirements clear, the Court made no explicit ruling about whether penalties may be imposed for past violations in citizen suits.

The facts of *Gwaltney* involved a citizen's suit in which all the violations existed prior to filing the complaint. *Id.* at 53, 108 S.Ct. at 379. The Court remanded the case for findings on whether the plaintiff had made a good faith allegation of an on-going violation. *Id.* at 67, 108 S.Ct. at 386.

On remand, the Fourth Circuit determined that jurisdiction existed, based on the district court finding that the citizen-plaintiffs had made a good faith allegation of on-going violations. *Chesapeake Bay Foundation, Inc, NRD v. Gwaltney of Smithfield*, 844 F.2d 170, 171 (4th Cir. 1988). The district court, in addition to finding a good faith allegation of on-going violations, imposed penalties of $1,285,322 for those past violations. *Chesapeake Bay Foundation, Inc., NRD v. Gwaltney of Smithfield*, 688 F.Supp. 1078 (E.D.Va. 1988). That decision is currently under appeal, according to defendants.

The First Circuit construed Section 505 of the Clean Water Act in *Pawtuxet Cove Marina, Inc. v. Ciba–Geigy Corp.*, 807 F.2d 1089 (1986), *cert. denied*, 484 U.S. 975, 108 S.Ct. 484, 98 L.Ed.2d 483 (1987), but that court has not reconsidered this question since the *Gwaltney* decision. Although *Gwaltney* noted and implicitly endorsed the rule of the First Circuit regarding jurisdictional prerequisites for a citizen suit, the Supreme Court did not comment on the dictum by the First Circuit pertaining to the imposition of penalties for past violations irrespective of a grant of injunctive relief. *See Pawtuxet*, 807 F.2d at 1094. In *Pawtuxet*, the court stated, "A plaintiff who makes allegations warranting injunctive relief in good faith, judged objectively, may recover a penalty judgment for past violations even if the injunction proves unobtainable." *Id.*

Therefore, lower courts are now faced with the task of attempting to glean from the dicta in *Gwaltney* when, if ever, civil penalties may be imposed in citizen suits. Based on a reading of *Gwaltney* and a recent New Jersey case, *Student Public Interest Research Group of New Jersey Inc. v. Monsanto Co.*, 29 E.R.C. 1078, 1988 WL 156691 (D.N.J.1988) (*"Mon-*

*santo II*"), this Court concludes that a district court may impose penalties in citizen suits only for violations committed after the complaint is filed. *But see Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109, 1116, n. 11 (4th Cir.1988); *accord, National Resources Defense Council v. Outboard Marine Corp.*, 692 F.Supp. 801 (N.D.Ill.1988) (dicta) (court will assess penalties for past violations); *Sierra Club v. Union Oil Co. of California*, 853 F.2d 667, 670 (9th Cir.1988) (District Court may not assess penalties for past violation until plaintiff proves the existence of on-going violations). The reasons for this conclusion are set forth as follows.

The Supreme Court's decision in *Gwaltney* unequivocally states that the position of citizen suits is secondary to actions brought by the EPA, and that the focus of citizen-plaintiffs should be "forward looking," with an emphasis on abatement of future pollution.

> The bar on citizen suits when governmental enforcement action is underway suggests that the citizen suit is meant to supplement rather than to supplant governmental action.... Permitting citizen suits for wholly past violations of the Act could undermine the supplementary role envisioned for the citizen suit.... *Id.* at 60 [108 S.Ct. at 383]. Respondents' interpretation of the scope of the citizens suit would change the nature of the citizens' role from interstitial to potentially intrusive. *Id.* at 61 [108 S.Ct. at 383].

The Court clearly articulated several reasons for concluding that Congress intended to limit citizen suits to enforce eradication of future violations. For example, jurisdiction over citizen suits is based solely on the likelihood of future violations. *See Gwaltney*, 484 U.S. at 57, 108 S.Ct. at 381. ("The most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future"). Furthermore, the Court stated:

> Our reading of the "to be in violation" language of § 505(a) is bolstered by the

language and structure of the rest of the citizen suit provisions in § 505 of the Act. These provisions together make plain that the interest of the citizen-plaintiff is primarily forward-looking. *Id.* at 59, 108 S.Ct. at 382.

The Court also noted "the pervasive use of the present tense throughout § 505," *id.*, by Congress, noting:

> One of the most striking indicia of the prospective orientation of the citizen suit is the pervasive use of the present tense throughout § 505. A citizen suit may be brought only for violation of a permit limitation "which is in effect" under the Act. 33 U.S.C. § 1365(f).... This definition makes plain what the undeviating use of the present tense strongly suggests: the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past. Id. at 59, 108 S.Ct. at 382.

The *Gwaltney* Court found further support for the forward-looking posture envisioned by Congress for citizen suits in the notice requirements of the statute. The Court implied that the interest of citizens' involvement should be focused on the future, not in the past, by stating that the targeting of wholly past violations would make the notice requirement gratuitous. *Id.* at 60, 108 S.Ct. at 383.

Perhaps the strongest indication that Congress intended to limit citizens' civil penalty remedies to the prevention of future violations, rather than to the punishment of past transgressions, is found in the Court's comparison of the powers given to the EPA under the statute, with those given to citizens.

> [In contrast,] § 505 of the Act does not authorize civil penalties separately from injunctive relief; rather, the two forms of relief are referred to in the same subsection, even in the same sentence. 33 U.S.C. § 1365(a). The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement. A comparison of § 309 and § 505 thus supports rather than refutes our conclusion that

citizens, unlike the Administrator, may seek civil penalties *only* in a suit brought to enjoin or otherwise abate an ongoing violation. *Id.* at 58–59, 108 S.Ct. at 382.

Furthermore, the Court in *Gwaltney* compares the Clean Water Act with the Clean Air Act and notes that, "... both the Senate and House Reports explicitly connected § 505 to the citizens suit provisions authorized by the Clean Air Act, which are wholly injunctive in nature." *Id.* at 62, 108 S.Ct. at 383. These passages from *Gwaltney* strongly imply that civil penalties should be assessed *only* for continuing post-complaint violations and as an adjunct to injunctive relief because the primary purpose of a citizen suit is to abate on-going violations.

In addition, the Court reviewed the legislative history of the statute and stated:

> The legislative history of the Act provides additional support for our reading of § 505. Members of Congress frequently characterized the citizen suit provisions as "abatement" provisions or as injunctive measures.... *Id.* at 61, 108 S.Ct. at 383.

> Moreover, both the Senate and House Reports explicitly connected § 505 to the citizens suit provisions authorized by the Clean Air Act, which are wholly injunctive in nature. *Id.* at 62, 108 S.Ct. at 383.

As the jurisdiction of this Court over citizen suits depends strictly and exclusively on the good faith allegation of on-going post-complaint violations, it would be incongruous for this Court to exercise that jurisdiction by assessing civil penalties on pre-complaint violations, which are not in themselves amenable to the Court's jurisdiction. Therefore, following to its logical conclusion Judge Van Artsdalen's cogent reasoning in *Monsanto II*, this Court rules as a matter of law that in citizen suits civil penalties may be imposed under Section 505(a) of the Clean Water Act only on post-complaint violations.[2]

 Accordingly, the Court grants the plaintiff's motion for summary judgment

as to liability but it will limit the trial on penalties to those violations which have occurred since the complaint was filed. In this Court's opinion, the order that civil penalties may not be imposed for pre-complaint violations involves "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). An immediate appeal from this order may materially advance the ultimate termination of the litigation, and I, therefore, certify this question for an interlocutory appeal pursuant to the statute.

In addition, based on a review of the memoranda and the oral arguments, this Court DENIES the plaintiff's motion for a preliminary injunction. The Court finds that the plaintiffs have not carried their statutorily determined burden of proving a reasonable likelihood that the defendant will continue to pollute without the Court's intervention. The defendant has demonstrated a consistent pattern of increasing compliance with its permit requirements. A violation has occurred in August, 1989, but it was for two hours around midnight, and a trainee was involved. Injunctive relief will also be considered at trial, with the benefit of current DMRs.

---

**2.** Of course, in determining what is an appropriate penalty to be imposed on post-complaint violations, the fact that past violations have occurred may be taken into consideration.